IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLIE E. PERRY                          Case No. 1:13-cv-01335-MA

            Plaintiff,                    OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

ARTHUR WILBUR STEVENS, III
221 Stewart Avenue, Ste. 209
Medford, OR 97501

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

BENJAMIN J. GROEBNER
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Charlie E. Perry seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).   For the reasons that follow, I reverse the Commissioner's final decision and remand for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2007, plaintiff protectively filed an application for a period of disability benefits and DIB benefits alleging disability beginning November 1, 2006.   The claim was denied initially and on reconsideration.   Plaintiff requested a hearing before an administrative law judge (ALJ).   An ALJ held a hearing on October 27, 2009, at which plaintiff appeared with counsel and testified, as did vocational expert Mark McGowan, medical experts Susan G. Pelzer, Ph.D. and Alice Cox, M.D., and lay witness Claudia Perry.   The ALJ issued an unfavorable decision on November 10, 2009.   The Appeals Council granted plaintiff's request for review and remanded the case to the ALJ for further proceedings.

Meanwhile, plaintiff protectively filed additional applications for DIB and SSI on November 19, 2009, alleging disability beginning November 11, 2009 due to back problems, PTSD, and right leg arthritis. These claims were denied initially and upon reconsideration, and plaintiff requested review before an ALJ. At that point, plaintiff's May 14, 2007 DIB application was consolidated with his November 19, 2009 DIB and SSI applications using an alleged onset date of November 1, 2006. An ALJ held a video hearing on November 10, 2011, at which plaintiff appeared with his attorney and testified. A vocational expert, Frank Lucas, and a medical expert, Michael Gurvey, M.D., also appeared at the hearing and testified. On March 26, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1962, plaintiff was 49 years old when the ALJ issued the March 12, 2012 adverse decision. Plaintiff completed two years of college, earning an associates of science degree in agricultural production. Plaintiff has past relevant work as landscape laborer, painter spray II, warehouse supervisor, and resort caretaker.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920.

Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease and slight osteoarthritis and history of compression fracture of the thoracic spine; and obesity. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform medium work with lifting and carrying of 50 pounds occasionally and 25 pounds frequently, standing and walking six hours of an eight hour workday, sitting six hours of an eight hour

workday and occasional crawling and climbing of ladders, ropes or scaffolds.

At step four, the ALJ found plaintiff is able to perform his past relevant work as a painter spray II, and warehouse supervisor. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from November 6, 2006 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly examine his credibility; (2) the ALJ improperly evaluated the opinion and evidence from his treating physician John Shonerd, D.O.; (3) the ALJ failed to develop the record by recontacting Dr. Shonerd before discounting his opinion; (4) the ALJ failed to comply with the Appeals Council's remand order; (5) the ALJ failed to find that he meets or equals a listing at Step Three; and (6) the ALJ erred in failing to present a complete and accurate hypothetical to the VE.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting

the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

Plaintiff testified at the November 10, 2011 hearing that he formerly worked as a landscaper, foreman, and managed horse farms. Tr. 114.  Plaintiff testified that he had an MRI of his neck in October 2011 due to neck stiffness, headaches, numbness in his hands, and tingling in his arms.  Tr. 115-16.  Plaintiff stated that he last worked on November 1, 2006, and was laid off because he was having difficulty getting around, and now is supported by his mother and father.  Tr. 115.  Plaintiff stated that his mother is his caregiver, and that she makes sure his house is clean.  Tr. 121.

Plaintiff testified that he suffers pain in his lower back for which he takes Percocet (a narcotic pain medication) six times a day, and Flexeril (a muscle relaxer) two times a day. Tr. 116-17. Plaintiff later testified that he was not on any pain mediation, but was taking anti-inflammatories for his back. Tr. 122-23. Plaintiff testified that he had bilateral carpal tunnel release surgery on both wrists which was covered by workers' compensation. Plaintiff stated that he still has difficulty with his right wrist, but admitted that he has not had treatment for it, does not wear a brace, and that this condition has stayed the same. Tr. 118, 121.

Plaintiff testified that he exercises at home for his back pain. Plaintiff stated that he has been taking Zoloft for two months, but otherwise has not been hospitalized or otherwise sought treatment for any mental health symptom. Tr. 119.

Plaintiff testified that he is more comfortable bending forward when he sits. Tr. 80. Plaintiff stated that his right leg is weaker, that he stumbles more frequently, and now uses a walker that was prescribed by Dr. Shonerd. Tr. 120.

In a December 26, 2009 Function Report, plaintiff indicated that he spends most days sitting in a chair (20 percent of his time) or laying on the couch (75 percent), that he can cook, but needs help cleaning. Plaintiff reported that he takes care of his two children on occasion, with help from his mother. Tr. 470-71. Plaintiff stated that he sleeps only one to two hours a night,

needs help tying his shoes and buttoning a shirt, but is otherwise able to care for himself with reminders. Plaintiff stated that he can make himself a sandwich, can do light household chores, but it takes all day because he takes breaks. Tr. 472. Plaintiff described that he is unable to drive a car due to his right leg. Plaintiff stated that he watches television all day, and will go out once a week to the grocery store to buy food. Tr. 474. Plaintiff estimated he can lift five pounds and walk 20 feet before needing to rest for five minutes. Plaintiff stated that pain limits his concentration and attention, and does not handle stress or authority figures well. Tr. 475-76.

In a June 13, 2007 Function Report, plaintiff described that he has difficulty sleeping due to back pain, and has to rest when preparing meals. Tr. 362-63. Plaintiff stated that how much housework he does depends on the level of pain that he is experiencing. Tr. 362-63. Plaintiff stated that he does not drive a car due to back pain, and that he cannot go out alone. Plaintiff stated that his back pain affects all of his physical abilities, has difficulty getting along with authority figures, and uses a cane to prevents falls. Tr. 365-66.

In the decision, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that plaintiff's statements concerning

the intensity, persistence, and limiting effects of his symptoms were not entirely credible, providing several reasons.

First, the ALJ found plaintiff provided inconsistent statements about his pain medication. An ALJ appropriately may consider inconsistencies either within the claimant's testimony or between the testimony and the claimant's conduct. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010). The ALJ noted that at the November 10, 2011 hearing, plaintiff testified he took six Percocet and two Flexeril each day, but later contradicted himself stating that he presently was not taking any pain medication. Tr. 117, 122. The ALJ also discussed that plaintiff stated he did not have any problems with pain medication, but later indicated he weaned himself off Methadone because he did not want to become addicted to narcotic medication. Tr. 122-23. The ALJ found plaintiff's explanations were insufficient because plaintiff continued to take short-acting Percocet (a narcotic) for pain, but did not want to consider a longer-acting Methadone, and were inconsistent with his report to Dr. Shonerd that the Methadone and Percocet had "really helped." Tr. 25. The ALJ's findings are supported by the record. Dr. Shonerd's treatment notes reflect that on December 7, 2009, plaintiff reported that Percocet and Methadone were really helping with his pain control, yet on February 8, 2010, plaintiff reported to Dr. Shonerd that he went "cold turkey" off Percocet and Methadone because he was sick of

feeling addicted and constipated, and that he suffered withdrawal symptoms. Tr. 596, 598. Additionally, the record reflects that plaintiff soon returned to taking Percocet pain medication. *See, e.g.*, Tr. 594-95.

I conclude that the inconsistencies identified by the ALJ are supported by substantial evidence in the record. Even if I would not have discounted plaintiff's credibility on this basis, the ALJ's interpretation of the evidence is rational and will not be disturbed. *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Second, the ALJ discounted plaintiff's credibility because his function reports contained inconsistent statements. The ALJ detailed that in 2007, plaintiff reported he could lift 40 pounds and walk 400 feet. The ALJ noted that plaintiff reported he was independent with self-care, could prepare simple meals, and do laundry, but crossed those statements out, which the ALJ found "suspicious for an attempt to minimize his abilities." Tr. 25, 358-59. However, in a December 2009 function report, plaintiff indicated that he could lift only five pounds and walk 40 feet, and mostly spent time sitting in a chair or on the couch, that he could prepare simple meals, perform light chores, and required help tying his shoes and buttoning his shirts. Tr. 25, 470.

I conclude that the alleged inconsistencies between the 2007 and 2009 function reports is neither a clear nor convincing reason to discount plaintiff's credibility. Plaintiff has alleged that his pain was worsening, which is consistent with the deterioration of his abilities as described in 2009. In this light, comparing the 2007 function report with the 2009 report does not reveal discrepancies, and therefore, this finding is not supported by substantial evidence. Thus, the ALJ erred in discounting plaintiff's credibility on this basis.

Third, the ALJ discounted plaintiff's testimony based on his secondary gain motivation. An ALJ may discount a claimant's credibility based on secondary gain. *Edlund*, 253 F.3d at 1157-58. Here, the ALJ relied upon a statement by examining physician Dr. Solomon, who expressed that plaintiff's heavy use of Percocet was concerning, considering the relatively mild objective findings, and suspected that plaintiff was potentially exaggerating symptoms to obtain disability benefits or to support his opioid dependency. Tr. 669. The ALJ's conclusion is wholly supported by substantial evidence. While I agree with plaintiff that there is no evidence of drug-seeking behavior in the record, the ALJ discounted plaintiff's credibility based on secondary gain. This particular finding is supported by substantial evidence in the record, and is an appropriate basis upon which to discount plaintiff's credibility.

Lastly, the ALJ discounted plaintiff's credibility because the objective medical evidence did not support his allegations of debilitating symptoms.   Objective medical evidence is a relevant consideration regarding a claimant's credibility.   *See, e.g., Carmickle*, 533 F.3d at 1161 (inconsistency of a claimant's testimony with medical records legitimate basis for discounting a claimant's credibility); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(claimant's objective medical evidence relevant in determining the severity of pain and its disabling effects).   The ALJ detailed the lack of objective evidence to support the severity of plaintiff's symptoms.   For example, the ALJ found that plaintiff's contention that he required a walker for ambulation was unsupported by medical evidence.   The ALJ discussed the lack of nerve conduction studies to verify plaintiff's allegation of radiculopathy.   The ALJ noted that plaintiff's treating osteopath cited numerous negative straight leg raises, full strength and full sensation in his lower extremities which were contrary to Dr. Shonerd's diagnosis of radicolopathy.   The ALJ also discussed that Dr. Shonerd's treatment notes showed a lack of injuries from plaintiff's alleged multiple daily falls.   The ALJ also highlighted that plaintiff was not a surgical candidate, that objective testing showed no compromise of the nerve roots or spinal cord, and that plaintiff's 2011 MRI failed to show progressive degenerative changes.   Tr. 26-27.   The ALJ's findings are amply supported by

substantial evidence in the record, and as the ALJ found, belie plaintiff's claim of debilitating degenerative disc disease requiring the use of a walker.

Although the ALJ erred in discounting plaintiff's credibility on the basis of inconsistent statements in his function reports, the error is harmless. The ALJ's remaining reasons, when taken together, constitute clear and convincing support for the ALJ's adverse credibility determination. *Bray v. Commissioner Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)(despite that one reason for discounting claimant's testimony was error, remaining independent bases were supported by ample record evidence and provided clear and convincing support); *Carmickle*, 533 F.3d at 1163 (despite errors, ALJ's remaining reasons adequately supported adverse credibility finding).

## II.  Dr. Shonerd's Opnion

### A.    Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Ghanim*, 763 F.3d at 1161. When

evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Taylor v. Commissioner Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).

**B.   Dr. Shonerd**

Plaintiff complains that the ALJ improperly rejected the opinion of John Shonerd, D.O., his treating provider, in favor of testifying medical expert Michael Gurvey, M.D.   Dr. Shonerd's opinion was contradicted by Dr. Gurvey, and therefore, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Shonerd's opinion.

Dr. Shonerd has been plaintiff's treating osteopath for three years.   In an October 8, 2008 form for the Department of Child Support Services, Dr. Shonerd opined that plaintiff could participate in job training or educational programs, was capable of lifting five pounds, could walk 40 feet, needed to change position at will, and would require frequent full days of bedrest.   Tr. 568. In a treatment note on January 30, 2009, Dr. Shonerd opined that plaintiff has "light-duty capacity with a multitude of restrictions."   Tr. 577.   Specifically, Dr. Shonerd provided that plaintiff could not bend forward more than 75 degrees at the waist more than two or three times; could lift from the floor 15 pounds occasionally and 10 pounds frequently; could curl 20 pounds; could push/pull 30 pounds occasionally and 10 pounds frequently; could

overhead reach to eye level; and would require a five minute break to change position every 20 minutes.   Tr. 577.

In the decision, the ALJ gave no weight to Dr. Shonerd's October 2008 opinion because Dr. Shonerd provided a more expansive opinion his the January 30, 2009 treatment note just a few months later.   An ALJ may legitimately discount a treating provider's opinion when it is inconsistent with his own treatment notes.   *See Tommasetti*, 533 F.3d at 1041. ("The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations.").   The ALJ's determination is backed by substantial evidence, and therefore, the ALJ appropriately discounted Dr. Shonerd's brief October 2008 opinion because it was inconsistent with the more detailed January 2009 opinion.

The ALJ also gave no weight to Dr. Shonerd's January 30, 2009 opinion, noting that his diagnosis of radiculopathy is not supported by any objective testing, and was inconsistent with findings by neuorologist Miroslav P. Bobeck, M.D. and Jeffrey Solomon, M.D.   *See Bayliss*, 427 F.3d at 1216 (an ALJ may discount a physician's opinion because it is unsupported by clinical findings).   The ALJ's findings are amply supported by substantial evidence.   As the ALJ indicated, Dr. Bobeck examined plaintiff on September 27, 2008, to determine if surgical intervention could

16 - OPINION AND ORDER

alleviate plaintiff's back pain. Tr. 579-82. Dr. Bobeck concluded there was no evidence of radiculopathy, and that surgical intervention would not aid plaintiff, and instead recommended aggressive physical therapy and rehabilitation. Tr. 581-82. As the ALJ also correctly noted, Dr. Solomon examined plaintiff on July 20, 2007, and doubted "significant radiculopathy" (Tr. 543), and again in September 2011, finding a "largely normal neurologic examination" and no evidence of neuropathy (Tr. 669). Furthermore, as the ALJ noted, Dr. Shonerd's September 2, 2011 treatment note indicated an encouragingly normal neurological exam. Tr. 611. And, as the ALJ accurately noted, there are no nerve conduction test results in the record. Thus, I conclude the ALJ reasonably rejected Dr. Shonerd's opinion that plaintiff suffered radiculopathy.

The ALJ also discounted Dr. Shonerd's opinion that plaintiff required the use of a walker assistive device for ambulation. Plaintiff reported to Dr. Shonerd that his right leg would periodically give out, causing him to fall. At the November 10, 2011 hearing, plaintiff testified that he was falling more frequently, and that he required the use of a walker, prescribed by Dr. Shonerd. In the decision, the ALJ noted that Dr. Shonerd's treatment notes showed fairly benign examinations, with negative straight leg testing, intact heel-to-toe walking, normal deep

tendon reflexes, and normal strength and sensations in his right leg.

Plaintiff argues that contrary to the ALJ's determination, he also had periodic positive straight legs tests, in addition to one occasion of decreased sensation in his right toe, and that the ALJ erred in rejecting Dr. Shonerd's opinion on this basis. Tr. 655. I disagree. The ALJ acknowledged that Dr. Shonerd occasionally noted positive straight leg tests. Tr. 604-05, 621. Yet, as the ALJ discussed, the vast majority of his straight leg tests were negative, including as recent as Ocotber of 2011. Moreover, as the ALJ also correctly indicated, plaintiff consistently demonstrated 5/5 strength in his lower extremities without any decrease in sensation, findings that are inconsistent with Dr. Shonerd's opinion that plaintiff required a walker for ambulation. The ALJ also accurately noted that no other provider recommended use of a walker. And, the ALJ indicated that Dr. Shonerd noted the lack of objective support from plaintiff's alleged frequent falls. Tr. 27, 673. The ALJ's findings are wholly supported by substantial evidence. Therefore, given the overall minimal objective findings in the record as a whole, I conclude that the ALJ could reasonably find that Dr. Shonerd's benign examinations did not support the extreme measure of prescribing a walker. This is a specific and legitimate reason to discount Dr. Shonerd's opinion.

The ALJ also discounted Dr. Shonerd's opinion because Dr. Shonerd appeared confused about plaintiff's medical history, noting that Dr. Shonerd incorrectly stated that plaintiff suffered a failed back surgery. Tr. 587. As the ALJ correctly indicated, plaintiff testified that he has not had back surgery, thus undermining Dr. Shonerd's notes. Tr. 117. Plaintiff argues that Dr. Shonerd's statement was a simple mistake, and thus should not serve as a basis to discount his opinion. Even if I would not have discounted Dr. Shonerd on this basis, the ALJ's finding is supported by reasonable inferences in the record, backed by substantial evidence as a whole. *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Finally, the ALJ also discounted Dr. Shonerd's opinion because it was overly reliant on plaintiff's subjective symptom reporting. It is reasonable to discount a physician's opinion that is based on a claimant's subjective reporting when the claimant is properly found not credible. *See Bray*, 554 F.3d at 1228 (when the ALJ properly determines that a claimant's description of her limitations is not entirely credible, it is reasonable to discount a physician's opinion based on those less than credible statements); *Tommasetti*, 533 F.3d at 1041 (the ALJ may reject a physician's opinion predicated essential upon a claimant's

19 - OPINION AND ORDER

subjective statements when that claimant's credibility has been properly rejected). As discussed above, the ALJ's negative credibility finding was based on legally sufficient reasons and supported by substantial evidence in the record. The ALJ therefore legitimately rejected Dr. Shonerd's opinion on this basis. *Id.*

In short, I conclude the ALJ cited multiple specific and legitimate reasons to discount Dr. Shonerd's opinion that are supported by substantial evidence in the record. The ALJ did not err in discounting Dr. Shonerd's opinion.

### C.   Dr. Gurvey

The opinion of a nonexamining, testifying medical examiner may serve as substantial evidence when it is supported by, and consistent with, other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see* 20 C.F.R. §§ 404.1527(c)(4) (ALJ will generally give more weight to opinions that are "more consistent . . . with the record as a whole"), 416.927(c)(4)(same). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Morgan*, 169 F.3d at 600 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).

The ALJ gave great weight to the assessment of Dr. Gurvey, the testifying medical expert. At the hearing, Dr. Gurvey opined that

plaintiff did not meet or equal a listing and was capable of performing medium work. Dr. Gurvey testified that he reviewed plaintiff's medical records available prior to the hearing, and concluded that there was no objective medical evidence to support the diagnosis of radiculopathy, or the reaching, bending, or resting restrictions as described by Dr. Shonerd. Tr. 105-06. Dr. Gurvey opined that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand, walk and sit for six hours in an eight hour day with normal breaks, and had no push/pull restrictions. Tr. 104. Dr. Gurvey opined that plaintiff could only occasionally climb ropes, scaffolds and ladder and occasionally crawl. Tr. 104.

In the decision, the ALJ acknowledged that the evidence concerning plaintiff's RFC was inconsistent, noting that the other nonexamining physicians, and Dr. Cox, the testifying medical expert from the October 27, 2009 hearing, limited plaintiff to sedentary exertion. Tr. 27. The ALJ also acknowledged that Dr. Shonerd limited plaintiff to light exertion with restrictions. Tr. 27. However, the ALJ was persuaded by Dr. Gurvey's RFC assessment, based on his hearing testimony, the lack of objective medical evidence supporting plaintiff's symptoms, and plaintiff's secondary gain motives.

Plaintiff argues that Dr. Gurvey's opinion alone cannot from the basis of the ALJ's medium RFC because it is not supported by

substantial evidence in the record. The Commissioner contends that the lack of objective evidence wholly supports the ALJ's determination. Plaintiff is correct.

Dr. Gurvey's opinion is not consistent with the record as a whole. As the ALJ acknowledged, Dr. Gurvey's RFC exceeds all other medical evidence in the record. All other nonexamining physicians, including Dr. Cox, have assessed plaintiff with a sedentary RFC. Tr. 46, 48-50. While the objective medical record does not necessarily support the severity of restrictions as opined by Dr. Shonerd or by plaintiff's testimony, there is some objective medical evidence to support plaintiff's symptoms. Indeed, in a 2007 examination of plaintiff, Dr. Solomon noted objective evidence of muscle spasms. Tr. 543. Non-examining agency physician Dr. Jensen opined that a reduced range of sedentary exertion was appropriate based on Dr. Solomon's findings, which Dr. Kehrli affirmed on reconsideration in January of 2008. Tr. 552-53. An MRI conducted in 2008 shows some mild to moderate degenerative changes with canal stenosis and neural foraminal narrowing at L4-5, and moderate degenerative changes with canal stenosis and neural foraminal narrowing at L5-S1. Tr. 572-73. A comparison MRI in 2011 showed worsening degenerative changes at L4-5, but stable degenerative changes at L5-S1. Tr. 677.

Therefore, while the ALJ provided specific and legitimate reasons to discount Dr. Shonerd's opinion, there is objective

evidence to support plaintiff's allegations of degenerative disc disease of the lumbar spine with some osteoarthritis.  Although the ALJ properly discredited plaintiff, there is no evidence in the record indicating that plaintiff is capable of performing, or has been performing any activities of daily living even approaching medium work.  Therefore, I conclude that the ALJ's RFC based solely on Dr. Gurvey's opinion is not supported by substantial evidence in the record as a whole, and the ALJ has erred.[1]  *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995)(finding testifying medical expert's testimony by itself did not warrant rejection of treating doctor's opinion).

## III. <u>Duty to Develop the Record</u>

In his opening brief, plaintiff summarily contends that the ALJ erred in failing to adequately develop the record.  According to plaintiff, the ALJ erred by failing to re-contact Dr. Shonerd prior to rejecting his opinion.

An ALJ's duty to develop the record is triggered only where the record is ambiguous or insufficient for the ALJ to make a disability determination.  20 C.F.R. § 416.912(e); *Thomas v.*

---

[1]I reject plaintiff's suggestion that the ALJ substituted his own opinion for that of the medical evidence.  In this case, the ALJ encountered conflicting medical evidence in the record, and chose to accept only one of those opinions, namely Dr. Gurvey.  As discussed above, I have determined that the ALJ erred because Dr. Gurvey's opinion is not supported by substantial evidence in the record as a whole.  However, this does not equate with a determination that the ALJ substituted his own medical judgment for that of an expert medical opinion.

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff's contention would require an ALJ to re-contact any treating source where there is conflicting medical evidence in the record. Plaintiff's unsupported theory places too great a burden on the ALJ and is rejected. I conclude the record was not so ambiguous as to trigger the ALJ's duty to develop the record.

## IV.   **Compliance with the Remand Order**

Plaintiff argues that the ALJ failed to comply with the February 15, 2011 remand order. According to plaintiff, the ALJ was required to obtain a consultative orthopedic examination. Plaintiff maintains that the following statement in the Appeals Council remand order required that a consultative orthopedic examination be conducted:

> Thus, additional evidence in the form of an orthopedic consultative examination is needed to assist in determining whether the claimant's cane use is a medical necessity as the use of an assistive device may warrant additional residual functional capacity limitation.

Tr. 160.

The Commissioner contends that the ALJ was not required to order the orthopedic consultation, relying on the following permissive instructions in the Appeals Council's Remand Order:

> Upon remand, the Administrative Law Judge will:
>
> • Update the record, including obtain additional evidence concerning the claimant's musculoskeletal disorders in order to complete the administrative record in accordance with the regulatory standards

24 - OPINION AND ORDER

regarding consultative examinations and existing
medical evidence (20 C.F.R. 416.912-913).    The
additional evidence may include, if warranted and
available, a consultative orthopedic examination
and medical source statements about what the
claimant can still do despite the impairment(s).

. . .

• If warranted by the expanded record, obtain
evidence from a vocational expert to clarify the
effect of assessed limitations on the claimant's
occupational base (Social Security Ruling 83-14).

Tr. 161.

On remand, the ALJ declined to order an additional
consultative orthopedic examination finding there was sufficient
information in the record, and because he utilized a medical expert
at the hearing.

The ALJ "shall take any action that is ordered by the Appeals
Council and may take any additional action that is not inconsistent
with the Appeals Council's remand order."  20 C.F.R. §§ 404.977(b),
416.1477(b).  Nevertheless, failure to follow a remand order is not
a proper basis for the reviewing court to reverse or remand the
ALJ's final decision regarding a claimant's disability.    See
*Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1136-1138 (9th
Cir. 2011)(district court erred in awarding benefits for failure to
follow remand order without first ascertaining whether the claimant
was disabled).   Rather, "[t]he ALJ's errors are relevant only as
they affect that analysis on the merits."   *Strauss*, 635 F.3d at
1138.   Thus, the salient issue before this court is whether the

25 - OPINION AND ORDER

ALJ's decision is supported by substantial error and free of legal error.

As discussed above, I have concluded that the ALJ committed harmful error in relying upon the opinion of Dr. Gurvey, who opined that plaintiff could perform medium work. Conversely, I concluded that the ALJ legitimately discounted Dr. Shonerd's opinion that plaintiff requires the use of a walker because that opinion is not supported by objective medical evidence. To date, and contrary to the Appeals Council remand order, no physical capacities consultative or orthopedic examination of plaintiff has been performed. Therefore, I conclude that the record would benefit from further development of plaintiff's physical capacities, including whether plaintiff requires the use of a cane, and in this regard, the ALJ erred in failing to comply with the Appeals Council's remand order. *See Wentzek v. Colvin*, Case No. 3:12-cv-01687-SI, 2013 WL 4742993, *4, 12 (D. Or. Sept. 3, 2013)(discussing failure to follow remand order).

## V.    **ALJ Did Not Err at Step Three**

At step three, the ALJ concluded that plaintiff did not present medical evidence to meet or equal Listings 1.02, or 1.04, or any other Listing. I reject plaintiff's conclusory argument that the ALJ erred at Step Three. In his briefing to this court, plaintiff has not identified which particular Listing he purports to meet, nor has plaintiff identified a plausible theory as to how

26 - OPINION AND ORDER

his impairments combine to equal a Listing impairment. Accordingly, plaintiff has not met his burden at Step Three. *Burch*, 400 F.3d at 683; *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.2001). I find no error in the ALJ's Step Three analysis.

## VI. <u>RFC Assessment, Hypothetical Questions and Steps Four and Five</u>

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). If the RFC fails to include all of plaintiff's limitations, then the hypothetical is incomplete and the vocational expert's testimony holds no evidentiary value. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

In this case, the ALJ rendered a number of hypothetical questions to the Vocational Expert (VE), including a hypothetical including the limitations described by Dr. Gurvey. Based on the VE's testimony, the ALJ determined at step four that plaintiff was capable of performing his past relevant work as a painter spray II (DOT #741.687-018, medium, SVP 2, unskilled), and warehouse

27 - OPINION AND ORDER

supervisor (DOT #222.137-034, light, SVP 6, skilled). The ALJ did not reach step five of the sequential evaluation in the decision. Therefore, the VE's testimony as adopted by the ALJ, holds no evidentiary value.

## VII. Remand

After finding the ALJ erred, this court applies a three part test to determine whether the case should be remanded for further proceedings, or to calculate and award benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *Vasquez*, 572 F.3d at 593; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when these three conditions are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. Where, after evaluating the record as a whole, there are serious doubts that the claimant is, in fact, disabled, the court may exercise its discretion and remand the case for further administrative proceedings. *Id.* at 1021; *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

In this case, there remain outstanding issues to be resolved and I have serious doubts as to whether plaintiff has been disabled since his alleged onset date. Here, the ALJ erred in assessing

28 - OPINION AND ORDER

plaintiff's medium RFC exclusively on the testimony of Dr. Gurvey. However, I concluded that the ALJ correctly discounted Dr. Shonerd's limited light RFC, and there are other unchallenged opinions in the record indicating that plaintiff is capable of performing a range of sedentary work. Additionally, it remains unclear whether plaintiff must ambulate with a cane, the reason plaintiff's case was remanded by the Appeals Council initially. Moreover, it is unclear whether plaintiff is capable of performing the jobs identified by the VE, or whether other jobs exist in the national economy that plaintiff can perform because the ALJ did not reach step five of the sequential evaluation. It is not for the court to make step five findings; instead the court reviews step five findings for substantial evidence and legal error. In such instances, award of benefits is inappropriate. *See Harman*, 211 F.3d at 1180 (where vocational testimony fails to address claimant's limitations, remanding for further proceeding is appropriate). Therefore, on the record before me, I have serious doubts' that plaintiff has been disabled since November 1, 2006, and there are outstanding issues that must be resolved before a disability determination can be made.

Based on the foregoing, I exercise discretion under *Connett* and conclude a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ: (1) to reevaluate the opinion of Dr. Gurvey in light of the medical testimony as a

29 - OPINION AND ORDER

whole; (2) to obtain a consultative examination to determine plaintiff's physical capacities, including whether a hand held assistive device for ambulation is necessary; (3) to consider any new findings made by the ALJ and to re-evaluate plaintiff's RFC; and (4) to make adequate step four and five findings incorporating any revised findings.

### CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _28_ day of JANUARY, 2015.

_Malcolm F Marsh_
Malcolm F. Marsh
United States District Judge

30 - OPINION AND ORDER